### J. A. MARTIN v. THE STATE.

#### No. 4071. Decided May 10, 1916.

#### Rehearing denied June 7, 1916.

**1.—Murder—Corpus Delicti—Sufficiency of the Evidence.**

Where, upon trial of murder and a conviction of manslaughter, appellant contended on appeal that there was not sufficient evidence to sustain the finding that the deceased came to his death by the criminal act of the appellant, but the evidence showed that deceased had ten wounds inflicted on the back of his head, four of which were fatal; that the hammer with which deceased was apparently killed was hid under the house, and the bloody pillow slip, sheets, etc., were found hid above the ceiling, the corpus delicti was sufficiently established; the defendant admitting the killing but that he had it to do, and the court submitting the charge of self-defense, there was no reversible error.

**2.—Same—Evidence—Deadly Weapon.**

Where, upon trial of murder, the State's witnesses describe the wound stating that the skull of the deceased was soft and crushed and the imprint of the hammer plainly visible, there was no error in permitting the witness of the State to say that the wounds thus inflicted produced death.

**3.—Same—Evidence—Declarations of the Defendant—Arrest.**

Where, upon trial of murder, defendant's declarations made while he was not under arrest were introduced in evidence, there was no reversible error.

**4.—Same—Evidence—Instrument Used.**

After describing the wounds in the skin and skull of the deceased, there was no error in admitting testimony that these wounds could have been inflicted with the hammer found under the defendant's house.

**5.—Same—Sufficiency of the Evidence.**

Where, upon trial of murder and a conviction of manslaughter, the evidence sustained the conviction, there was no reversible error.

Appeal from the District Court of Matagorda. Tried below before the Hon. Samuel J. Styles.

Appeal from a conviction of manslaughter; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*J. W. Conger* and *Gaines & Corbet,* for appellant.—On question of corpus delicti: Pratt v. State, 50 Texas Crim. Rep., 227; Austin v. State, 101 S. W. Rep., 1162; Lott v. State, 131 S. W. Rep., 553.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was charged with murder and when··

tried was found guilty of manslaughter and his punishment assessed at three years confinement in the State penitentiary.

The evidence would show that appellant had at his home a considerable quantity of whisky, and deceased, L. F. Reed, went over to his house on the morning of June 14, 1914; they both got drunk and went to sleep, waking up late in the afternoon. Just after dark appellant told some witnesses that "he had killed Reed—that he had it to do." A number of citizens then went to appellant's home and found Reed lying on the floor; on the back of his head were ten wounds, four of them crushing the skull, according to Mr. Shurtz. There were also three other wounds on deceased's back. Some of the witnesses say that appellant admitted he had hit deceased with a hammer. A hammer was found under the house of appellant with hair on it, the color of the deceased's hair, and some blood. The handle of the hammer was thirteen and one-half inches long, and the hammer weighed one pound and four ounces. There was also found above the ceiling of the house a bloody pillow slip, sheet and other articles. On the pillow slip was found hair the color of that on the hammer, and the color of the deceased's hair.

Appellant contends that this evidence would not sustain a finding that deceased came to his death by the criminal act of appellant. It is true, as he contends, that in establishing the corpus delicti not only must it be proven that the man has been killed, but also that a criminal act caused his death, but we think the fact that deceased had ten wounds inflicted on the back of his head, four of a character to inflict death, that the hammer was found hid under the house, and the bloody pillow slip, sheet, etc., were found hid above the ceiling, would support a finding that death was criminally caused. Of course, if the jury had found that "appellant had it to do" as he stated, he should have been and would have been acquitted under the court's charge.

Appellant's defense was self-defense, and a right to eject from his premises. Both issues were submitted in the charge given the jury in a manner not complained of by appellant.

Appellant objected to witnesses who examined the body of the deceased stating that the wounds in the back of the head would have produced death. After describing the wounds and stating that the skull was soft and crushed and the imprint of the hammer plainly visible, we do not think there was any error in admitting this testimony. After the hammer had been introduced in evidence, the length of the handle and the weight shown, we do not think there was error in permitting the witnesses to state that death could be produced with it by an ordinary man striking one in the back of the head with it.

The statements of appellant introduced in evidence were admissible, as he was not under arrest when made He told the witnesses he was going to Bay City to surrender and asked them to go with him. Those who accompanied him at his request were not officers of the law, and appellant was under no restraint when he made the statements.

After describing the wounds, the half circle indentation made in the

skin and skull, there was no error in permitting the witnesses to state the wounds could have been inflicted with an instrument like the hammer found under appellant's house, with blood and human hair on it.
· This disposes of all the bills of exception in the record, and while the circumstances testified to by appellant and his wife were certainly very aggravating, and the jury must have so found to have inflicted so mild a punishment, yet the record before us presents no error in the trial of the case.
· The judgment is affirmed.

*Affirmed.*

·[Rehearing denied June 7, 1916.—Reporter.]